IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEO ALECK,        PEARL CHARLEY,                                    CV 04-277 AS
JOANNE TAHMALWASH, and the
Heirs of EDDY (EDDIE) ALECK,

                        Plaintiffs,                    FINDINGS AND RECOMMENDATION

            v.

THE UNITED STATES OF AMERICA,
acting by and through the BONNEVILLE
POWER ADMINISTRATION, and STEVE
WRIGHT, Administrator of the Bonneville
Power Administration,

                        Defendants.

_____

ASHMANSKAS, Magistrate Judge:

        Plaintiffs are members of the Yakama Nation, and are the owners of Vancouver

Allotment No. 162, an 80-acre parcel of property in the Columbia River Gorge, located in the

State of  Washington, approximately ten miles east of The Dalles, Oregon.  In their First

Amended Complaint, plaintiffs assert claims for trespass, and seek declaratory and injunctive

1  - FINDINGS AND RECOMMENDATION

relief, an accounting and disgorgement of the benefits derived from the trespass, treble damages, fees and costs. Defendants' Motion to Dismiss the claims for declaratory and injunctive relief was granted on October 21, 2005. (Docket number 68).

<u>FACTUAL BACKGROUND</u>

In 1907 the United States government allotted to Minnie, a member of the Klickitat tribe, an 80-acre parcel of land known as Vancouver Allotment No. 162. Since that time, the United States has held the land in trust.

In 1953 defendant Bonneville Power Administration ("BPA") acquired an easement over Allotment No. 162 from Edna Welch Alex, the sole heir of the original owner, Minnie. The document provides that the owner consents "to the granting of an electric transmission line and access road right-of-way thereover, as contemplated by the application of the Bonneville Power Administration," for the consideration of $170. In 1951 the Yakima Superintendent approved the transmission easement for a period of 50 years, commencing May 6, 1953.

BPA has a 500-foot wide transmission easement from the McNary Dam, near Umatilla, Oregon. The easement crosses the Columbia River and runs parallel to the river down the Washington side to a point just east of The Dalles, Oregon. At that point the easement splits, and one half (250 feet) crosses back into Oregon to the Big-Eddy Substation, just east of The Dalles, Oregon. The other half of the easement continues along the Washington side of the Columbia River to the Ross Substation in Vancouver, Washington. Plaintiffs' property is located west of the point where the transmission lines split. Thus, the easement in dispute contains both the McNary-Big Eddy transmission line and the McNary-Ross transmission line.

On May 6, 2003, the 50-year easement over Allotment No. 162 expired. Plaintiffs assert

four trespass claims.  Their first claim is that the BPA never received an easement for the second transmission line, the McNary-Ross line, erected in 1953, and that the line has been in trespass since construction. Their second claim is that the McNary-Big Eddy line is in trespass since May 6, 2003.  Plaintiffs' third claim is that federal law prohibits rights of way for electric transmission lines across Indian lands that are greater than 400 feet in width, and that BPA's 1954 assertion of a right of way 500 feet wide is illegal and void *ab initio*.  Finally, plaintiffs' contend that the BPA access road across their land is outside of the right of way and constitutes a trespass from the date of construction and first use.

Plaintiffs  move to transfer "the issue of damages for Bonneville Power Administration trespasses upon their land"[1] to the United States Court of Federal Claims ("Court of Claims"). The Court of Claims has exclusive jurisdiction over money claims against the United States, not sounding in tort, when they exceed $10,000.   28 USC §§ 1346(a)(2), 1491.[2]

---

[1]Plaintiffs' Motion and Memorandum In Support For Partial Transfer To Court Of Federal Claims, p. 1.

[2] 28 USC § 1346(a)(2) provides in relevant part:

1346.  United States as defendant

(a)  The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(2)  any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

28 USC § 1491 provides in relevant part:

1491.  Claims against United States generally;....

(a)(1)  The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

3  - FINDINGS AND RECOMMENDATION

LEGAL STANDARDS

This court may transfer a civil action over which it lacks jurisdiction "if it is in the interest of justice...to any other such court in which the action or appeal could have been brought at the time it was filed." 28 USC § 1631. In determining whether to transfer a case to the Court of Claims, this court must consider whether the statute of limitations would otherwise run, the convenience of parties and witnesses, and whether efficient and expeditious administration of justice would be furthered. *Sherar v. Harless,* 561 F2d 791, 794 (9th Cir 1977).

Defendants argue that the "efficient and expeditious administration of justice" is not furthered if the consequence of such a transfer is that the claims will be dismissed on arrival in the receiving court, citing *Phillips v. Seiter,* 173 F3d 609 (7th Cir 1999). The *Phillips* court considered whether petitions for habeas corpus, erroneously filed in the wrong district, should be transferred to the correct district pursuant to 28 USC § 1631:

> ...there is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed, for example because the statute of limitations had already run when the case was initially filed. A court is authorized to consider the consequences of transfer before deciding whether to transfer; that is implicit in the statute's grant of authority to make such a decision [citation omitted] and implies in turn that the court can take a peek at the merits, since whether or not the suit has any possible merits bears significantly on whether the court should transfer or dismiss it. It may seem paradoxical to suggest that a court that lacks jurisdiction over a case can examine the merits of the case. But the paradox dissolves when we remind ourselves that Congress in 28 U.S.C. § 1631 has conferred jurisdiction on federal district courts to decide whether to transfer or dismiss cases over which they lack jurisdiction to adjudicate fully. The limited jurisdiction that has been conferred creates a power of limited review of the merits. If the limited review reveals that the case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the court in which it is initially filed-the court that does not have jurisdiction-should dismiss the case rather than waste the time of another court. Expedition is the byword in administering the new

> system of postconviction review created by the Antiterrorism and
> Effective Death Penalty Act of 1996....

*Phillips,* 173 F3d at 610-11.  The court determined that the petitions were untimely when filed because they were filed two and three years after conviction when the statutory deadline was one year, and neither appellant suggested that he fit within any statutory exception.  The cases fell within the "sure loser exception to section 1631," and the district court's dismissal for lack of jurisdiction was upheld.  *Id.*

The Court of Claims is obligated to determine its own jurisdiction.  *Hicks v. United States,* 23 Cl Ct 647, 652 (1991) *citing Hambsch v. United States,* 857 F2d 763 (Fed Cir 1988), *cert.denied,* 490 US 1054 (1989).  Defendant argues that plaintiffs' claims must be dismissed because they cannot be brought in the Court of Claims because they sound in tort.

The Court of Claims has determined that a claim predicated on intentional and wrongful regulatory action in the consideration, approval, or servicing of a Farmers Home Administration ("FmHA") loan or application is beyond its jurisdiction.  *Somali Dev. Bank v. United States,* 205 Ct Cl 741, 508 F2d 817, 821 (1974).  The *Somali Dev. Bank* court held that it lacked jurisdiction over claims against the United States for negligent misrepresentation, wrongful inducement, or careless performance of a government duty.  *Id.*  Similarly, the Federal Circuit has found that undue delay by FmHA in making a loan sounds in tort.  *Smithson v. United States,* 847 F2d 791, 795 (Fed Cir 1988), *cert. denied,* 488 US 1004 (1989).  The Court of Claims lacks jurisdiction over "claims for damages based on fraud, misrepresentation, false pretenses, and abuse of authority.  Such claims sound in tort and are redressable, if at all, in district court."  *Hicks,* 23 Cl Ct at 653.

In *Hicks*  a soybean farmer alleged that he suffered damages when the United States

5  - FINDINGS AND RECOMMENDATION

failed to approve his FmHA loan application and  breached a farm storage note agreement.   He

brought the action in district court, which, for want of subject matter jurisdiction, transferred the

action to the Court of Claims.  Defendant moved to dismiss, contending that the court lacked

jurisdiction because plaintiff's claims sounded in tort. The court noted that it was obligated to

determine its own jurisdiction, and found that plaintiff's allegations of damages arising from

government fraud, misrepresentation, and false pretenses in the handling of his FmHA loan

application sounded in tort and must be remanded to the district court.  *Id*.  However,  plaintiff's

claim that the government breached the farm storage note was predicated upon an express

contract between the plaintiff and the government, and therefore the Court of Claims concluded

that it had jurisdiction over that claim under the Tucker Act.

Plaintiffs contend that their tort claims arise out of the easement or contract and are

therefore within the jurisdiction of the Court of Claims , citing *Estate of Dunaway v. United

States,* 18 Cl Ct 492 (1989).  The *Dunaway* plaintiff entered into an agreement with the

government, through the Bureau of Land Management ("BLM"), to exchange plaintiff's land for

publicly owned timber rights and lands known as the Buckeye Mountain timber tract.  The BLM

was responsible for determining the fair market value of the land.  The BLM estimated the

volume of timber in the Buckeye Mountain tract in 1980.  The valuation of the estimated volume

was completed in 1982.  The government's management of the area, including the Buckeye

Mountain tract, included timber leases and contracts to cut and haul away timber.  According to

plaintiff's complaint, one of the contractors trespassed on the Buckeye Mountain tract between

the time of the survey and the time of the transfer of the land to plaintiff.  The trespasser illegally

removed about 400,000 board feet of timber.   Neither party was aware of the trespass before the

conveyance was complete in February 1983. Plaintiff discovered the trespass in June 1986, and requested payment from BLM of $46,000, representing the difference between the estimated and actual harvest.

Plaintiff filed a complaint in the district court setting forth two causes of action:  1) breach of contract on the land and timber exchange for failure of obligation and 2) negligence in the government's duty to protect the land from trespass and/or to properly inspect the land before the exchange to insure the accuracy of the timber survey.  The case was transferred to the Court of  Claims, on defendant's motion, on the basis that it had exclusive jurisdiction over the contract claim and could hear the tort claim since it arose out of the contract provisions.  Defendant then moved for dismissal, arguing that plaintiff's claims sounded in tort, not contract, and were therefore outside the court's jurisdiction.

The court noted the statutory requirement that the "claim must not sound solely in tort," and that the action originated as a claim under the Federal Tort Claims Act ("FTCA").  Before the district court plaintiff brought the tort claims begun under the FTCA, plus a claim alleging breach of contract.  In support of both the tort and contract claims, plaintiff contended that the government breached its duty through negligent supervision of the timber cutting contracts and/or negligent failure to discover or stop the trespass.

The court acknowledged that all of the allegations could be characterized as torts. However, it found that the allegations could also be characterized as alleging a contractual breach of duty.  The duty could arise under express contract provision, or statutory provision incorporated into the contract, by misrepresentation of a material fact, or mistake as to a material fact.  The court determined that "a breach of contractual duty is a plausible construction of

plaintiff's complaint," and that it therefore had subject matter jurisdiction. *Dunaway,* 18 Cl Ct at 496. Similarly, the Court of Claims has found that "[i]n a connected tort-contract claim, an action may be maintained in this court which'...arises *primarily* from a contractual undertaking regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract'...or from a tortious breach of contract." *Fort Sill Gardens v. United States,* 355 F2d 636, 637-38 (1966)(quoting *Chain Belt Co. v. United States,* 115 FSupp 701, 712, 127 CtCl 38 (1953))(emphasis in original)(citations omitted).

Plaintiffs argue that BPA would not be on their land without the consent to the easement given in 1953. They contend that BPA's initial entry on the land was lawful, but that it has violated the terms of the agreement by expanding the scope of the right of way and overstaying the term of the granted right of way.

Plaintiffs' claim for damages arising out of the continuing occupation of their land following the expiration of the easement arises primarily from the contractual undertaking and should therefore be transferred to the Court of Claims. Plaintiffs acknowledge that the statute of limitation for filing a contract claim against the United States is six years.[3] Plaintiffs' claims for trespass arising in 1953 and 1954, claims 1, 3, and 4, are clearly time-barred and should be dismissed.

## RECOMMENDATION

For the reasons set forth above, plaintiffs' Motion for Transfer to the Court of Federal Claims (Docket number 73 ) should be granted as to their second claim and denied as to their

---

[3]Plaintiffs' Motion and Memorandum in Support For Partial Transfer to the Court of Claims, p. 10.

first, third and fourth claims, and this case should be dismissed.

SCHEDULING ORDER

The above Findings and Recommendations will be referred to a United States District Judge for review.  Objections, if any, are due May 24, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due June 7, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 9th day of May, 2006.

_____
Donald C. Ashmanskas
United States Magistrate Judge